448 A.2d 591

**COMMONWEALTH of Pennsylvania**

v.

**Joel ZISHOLTZ and Emily Zisholtz, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 5, 1981.

Filed July 23, 1982.

Malvin L. Skaroff, Philadelphia, for appellant.

Thomas E. Waters, Jr., City Solicitor, and Ronald T. Williamson, Assistant District Attorney, Norristown, did not file a brief on behalf of Commonwealth, appellee.

Before SPAETH, BECK and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from judgments of sentence for summary violations of Section 58–17 of the Abington Township Code. Appellants contend that they should be discharged because the evidence presented at trial was insufficient to sustain the convictions. We agree and therefore order the judgments of sentence vacated and appellants discharged.

Section 58–17 of the Abington Code provides:

No person shall keep or harbor any animals in the township so as to create offensive odors, excessive noise or unsanitary conditions which are a menace to the health or safety of the public, or otherwise permit the commission or existence of a nuisance as defined hereinafter.

The charge that appellants violated this provision arose from appellants' keeping of two pet peafowl—a peacock and a peahen.

The Commonwealth presented the testimony of one witness, Edwin H. Rogers, the Health Inspector of Abington Township. N.T. 5. Mr. Rogers observed appellants' home on numerous occasions between September 25, 1978, and September 17, 1980. At various times appellants had several exotic pets on their premises: a wallaby, two pigmy goats, a llama, and a peacock. After December 1978, however, appellants, at the request of the township, got rid of all of

their pets except for the peacock. Sometime later, by September 17, 1979, appellants got a peahen, and it is the conduct of appellants' peacock and peahen that is at issue here. Mr. Rogers said that he "heard the peacock on a couple of occasions, but most recently this morning [September 17, 1980]—when I walked on the property, it let out sort of a 'honk.'" N.T. 9. Mr. Rogers also testified that he had received some complaints concerning appellants' pets, but it is unclear whether these complaints were about the peafowl or the other pets. *Id.* None of the complainants testified, and Mr. Rogers admitted on cross-examination that at least one neighbor, who apparently complained about the other pets, told him that she did not mind the peacock. N.T. 12.

Appellant Joel Zisholtz testified in his own defense. He admitted having the two peafowl, but testified that their "honking" was no louder than a dog's bark or the squawking of a crow. N.T. 21–22. He said that they were ordinarily housed in the center of his three acre lot, but on cross-examination he admitted that sometimes, particularly when frightened, they have escaped from this area. *Id.* Appellant also admitted on cross-examination that he had received "[o]ne complaint from one neighbor out of eight," but he was only asked whether the complaint was "as to these birds," *id.*, so that we do not know the date or nature of the complaint.

Paul R. L. Bowen, appellant's "closest neighbor," N.T. 25, testified that he and his wife enjoyed the peacock and peahen. He said that while recuperating from an operation he often watched them roam, "and I enjoyed their beauty." N.T. 25. He admitted that they would occasionally "honk" but said that the noise was "like a little beep of a motor horn, once in a while. And that is not as bad as the motor horns that are on Fairyhill Road and Washington Lane [adjacent roads] at the time of the rush hour, during the morning and evening, people going to work and coming home." *Id.*

The gravamen of the offense defined in Section 58–17 of the Abington Code is not the keeping of animals in the

township but rather the keeping of them "so as to create" certain proscribed conditions. In appraising the sufficiency of the evidence of appellants' guilt, we may start by noting that the Code is unclear in describing just what these proscribed conditions are. They are described as "offensive odors, excessive noise or unsanitary conditions which are a menace to the health or safety of the public . . . ." The question is whether the "which are a menace" clause modifies only the immediately preceding "unsanitary conditions" or also "offensive odors" and "excessive noise." We need not decide this question, however. There was no evidence either of "offensive odors" or of "unsanitary conditions." If the Commonwealth had to prove that appellants' peacock and peahen made noise that was both "excessive" and "a menace to the health or safety of the public," it failed; for there was no evidence regarding the health or safety of the public. If the Commonwealth only had to prove "excessive noise," it also failed; for whatever "excessive" means—and we pass the point whether so general a term is too vague to support a conviction of crime—it cannot include "sort of a 'honk,'" not described further by the Commonwealth at all, and described by the defense as "like a little beep of a motor horn."

Finally, the evidence was insufficient to prove that appellants "otherwise permit[ted] the commission or existence of a nuisance as defined hereinafter." The only pertinent portion of the Code provides as follows:

Any animal which, by biting without provocation, habitual barking, howling, or yelping, disturbs the peace or endangers the health or safety of persons is hereby declared to be committing a nuisance.

Abington Township Code § 58–18.

There was no evidence that appellants' two peafowl are habitual honkers or that their honking in any manner disturbed the peace of the neighborhood.

The judgments of sentence are reversed and appellants discharged.